UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW MEXICO

In re
Jeffrey David Heise, Debtor.                    No. 13-09-13824 SA

**MEMORANDUM OPINION IN SUPPORT OF ORDER
APPROVING IN PART AND DENYING IN PART
AMENDED APPLICATION FOR ALLOWANCE OF FEES
BY DEBTOR'S COUNSEL**

The Amended Application for the Allowance of Fees for the
Period of February 23, 2009 to November 30, 2009 (doc 25), filed
by Debtor's counsel ("Counsel"), together with the objection
thereto filed by the Chapter 13 Trustee (doc 26), came before the
Court for an oral argument on February 9, 2010.  Based on the
oral argument and the record, the Court grants the application
but in a smaller amount than requested by Counsel.  Specifically,
the Court rules that Counsel's rate should be allowed at the rate
of $200 per hour for the work done, 1.2 hours of Counsel's time
should be subtracted from the billing, and the time for preparing
the fee application should be allowed at one hour.

Counsel appeared and argued on behalf of the application;
the Chapter 13 Trustee, with the permission of the Court, did not
appear.  The Debtor did not take a position on the fee
application; the Court assumes that the Debtor saw and approved
the application before it was filed.[1]  The application was argued

_____

[1] This was a case in which the Debtor was required to pay a
set amount into the plan, out of which all the attorney fees were
to be paid.  Thus, with the attorney fees in whatever amount
coming out of the pockets of the creditors and not the Debtor,

Page 1 of  21

at the same time as another compensation application filed by Counsel in another unrelated chapter 13 case, <u>In re Romero</u>, 2010 WL 964209 (Bankr. D. N.M. 2010), pending before the Honorable Robert H. Jacobvitz.[2]  The hearing was conducted so that Counsel could argue that he should be entitled to bill his current usual and customary $250 per hour for his time spent on the case rather than the $225 per hour he was formerly charging.  Because the same issue was addressed meticulously and correctly by Judge Jacobvitz in <u>Romero</u>, this Court will rely largely on that decision, and add only additional considerations specific to this case.

The application seeks approval of a total of $4,635.73, comprised of $3,450.00 of attorney fees for Counsel at the rate of $250 per hour (13.8 hours), $611.00 for paralegal services at $65 per hour (9.4 hours), $294.53 for reimbursement of costs (including $274 of the filing fees), $278.79 for reimbursement of New Mexico gross receipts tax ("GRT") on the fees, and $1.41 for reimbursement of the GRT on the costs.[3]  The application also

the Debtor would have had no financial incentive to challenge Counsel's fees.  <u>See</u>, <u>e.g.</u>, <u>In re Romero</u>, 2010 WL 964209 (Bankr. D.N.M. 2010), at *4; <u>In re Szymczak</u>, 246 B.R. 774, 778 (Bankr. D.N.J. 2000).

[2] Both judges of the United States Bankruptcy Court for the District of New Mexico presided over the oral argument, although the hearing was not conducted en banc.

[3] The Court has been unable to exactly duplicate Counsel's figures, though the differences are minor.  The Court's own

Case 09-13824-t13    Doc 35    Filed 06/30/10    Entered 06/30/10 16:26:06 Page 2 of 22

recites (and the time sheets confirm) that Debtor paid Counsel $1,000.00 (of which $274 was used to pay the chapter 13 filing fee) as a prepetition retainer, so that Counsel seeks approval of the total amount of $4,635.73 and payment authorization for $3,635.73.  In addition, the application seeks fees of $300.00 plus tax of $20.25 for preparing and filing this fee application, plus costs of noticing of $29.00 plus tax thereon of $1.96, for an additional amount of $351.21.  This raises the total application to $4,986.94, and payment authorization of $3,986.94. The application recites that the fees arise from the "necessary and important services [provided] to the estate in representing the Debtor in their [sic] Chapter 13 bankruptcy".

The Chapter 13 Trustee's Objection to Application for Compensation raised two objections, to the rate of $250 per hour as too high and to the failure to timely file the Statement of Financial Affairs that resulted in a continued section 341 meeting.

<u>BACKGROUND</u>

The CM file shows that the case was filed on August 26, 2009 (doc 1); the section 341 meeting was first set for, and was initially conducted on, October 7, 2009; on October 7 the Chapter 13 Trustee continued the section 341 meeting to October 21, 2007,

_____

calculation, part of which was required by the ruling on the application, appears at the end of this opinion.

Page 3 of  21

on which date she conducted and concluded the continued meeting;
the Debtor successfully moved for valuation of the 2005 Dodge Ram
pick up (docs 14 and 18) without objection from the creditor[4];
and on November 17, 2009, an order confirming the plan was
entered (doc 21).  The docket also shows that Counsel filed the
Disclosure of Compensation on August 26 (doc 9), showing that
Counsel was charging $250 per hour.  And it shows that the
Statement of Financial Affairs (sometimes "SOFA") was not filed
with the petition, schedules, means test, etc. (doc 1) on the
filing date, but rather on October 13, 2009 (doc 16), following
the first section 341 meeting.

The time sheets reflect representation that commenced on
February 23, 2009 and preparation of the case that began on May
1, 2009, and filing, as noted above, on August 26, 2009.  Doc 25,
items 3 and 4.  The time sheets show the extensive and
appropriate use of a paralegal to do much of the work, a
necessity for cost-efficient representation of chapter 13
debtors.  And they show a billing for Counsel of .2 hour ($50) on
October 20, 2009 for preparation for the continued 341 meeting
and one hour ($250) on October 21, 2009 for attending the
continued section 341 meeting.

The CM file, including items such as the schedules and

_____

   [4] The order reduced the secured portion of the claim to
$11,000 from $23,203; see Chapter 13 Plan, ¶ 4.4 (doc 4).

statement of financial affairs, does not disclose or suggest anything unusual about the case. Debtor owned a home valued at $125,000 securing repayment of two mortgage notes totaling $106,000[5]; he also owned miscellaneous items of personal property valued at about $21,000, most of the value of which was in a 2005 Dodge Ram pick up valued at $11,000 securing repayment of a lien of $23,000 and a pontoon boat valued at $6,000 owned free and clear of liens. $400 of his $1,600 Textron Savings Plan was vested. Debtor correctly exempted all the equity in all the property.

The management of the case was also quite simple, about as simple as it gets in chapter 13. The time sheet entries of October 7 and October 22 do not show any negotiations with the creditor concerning valuation of the vehicle, and the standard form plan required only a few blanks to be filled in (doc 4). There were no objections to the valuation motion or to the plan.[6]

ANALYSIS

At oral argument Counsel correctly framed the discussion: the ultimate question is whether the fee charged is reasonable for the case, and the hourly rate charged by counsel is one element in making that decision but is not by itself dispositive.

_____

[5] The debt numbers are rounded to the nearest $1,000.

[6] The relative simplicity of the motion and the plan suggest the reason for the lack of objections, rather than the experience brought to bear on those issues by Counsel.

See Romero, at *4.  The applicable statute dictates this
approach.

> § 330. Compensation of officers
> (a)(1) After notice to the parties in interest and the
> United States Trustee and a hearing, and subject to
> sections 326, 328, and 329, the court may award to a
> trustee, a consumer privacy ombudsman appointed under
> section 332, an examiner, an ombudsman appointed under
> section 333, or a professional person employed under
> section 327 or 1103--
> (A) reasonable compensation for actual, necessary
> services rendered by the trustee, examiner, ombudsman,
> professional person, or attorney and by any
> paraprofessional person employed by any such person;
> and
> (B) reimbursement for actual, necessary expenses.
> (2) The court may, on its own motion or on the motion
> of the United States Trustee, the United States Trustee
> for the District or Region, the trustee for the estate,
> or any other party in interest, award compensation that
> is less than the amount of compensation that is
> requested.
> (3) In determining the amount of reasonable
> compensation to be awarded to an examiner, trustee
> under chapter 11, or professional person, the court
> shall consider the nature, the extent, and the value of
> such services, taking into account all relevant
> factors, including--
> (A) the time spent on such services;
> (B) the rates charged for such services;
> (C) whether the services were necessary to the
> administration of, or beneficial at the time at which
> the service was rendered toward the completion of, a
> case under this title;
> (D) whether the services were performed within a
> reasonable amount of time commensurate with the
> complexity, importance, and nature of the problem,
> issue, or task addressed;
> (E) with respect to a professional person, whether the
> person is board certified or otherwise has demonstrated
> skill and experience in the bankruptcy field; and
> (F) whether the compensation is reasonable based on the
> customary compensation charged by comparably skilled
> practitioners in cases other than cases under this

Page 6 of  21

title.[7]
(4)(A) Except as provided in subparagraph (B), the
court shall not allow compensation for--
(I) unnecessary duplication of services; or
(ii) services that were not--
(I) reasonably likely to benefit the debtor's estate;
or
(II) necessary to the administration of the case.
(B) In a chapter 12 or chapter 13 case in which the
debtor is an individual, the court may allow reasonable
compensation to the debtor's attorney for representing
the interests of the debtor in connection with the
bankruptcy case based on a consideration of the benefit
and necessity of such services to the debtor and the
other factors set forth in this section.
...
(6) Any compensation awarded for the preparation of a
fee application shall be based on the level and skill
reasonably required to prepare the application.

11 U.S.C. section 330(a).

By these standards, and based on the evidence[8], Counsel's

application should be approved but not as submitted.

To begin with, Counsel's services overall clearly benefitted

both the estate and the individual debtor.  Therefore the

application is allowable in some amount.

However, Counsel should not be compensated for the time

spent preparing for and attending a second section 341 meeting

---

[7] The Romero case states that a court is not confined to its
own district when surveying the rates charged for comparable
types of work, citing In re McClanahan, 137 B.R. 73, 74-75
(Bankr. M.D. Fla. 1992).  This Court need not rule on this issue,
since Counsel presented data only from the District of New
Mexico.

[8] Neither Counsel nor any other person testified under oath;
the Court took Counsel's representations at the podium as
evidence, as it did Counsel's exhibits.  The Court has also taken
notice of the CM file in this case.  F.R.Evid. 201.

Page 7 of  21

occasioned by Counsel's oversight in failing to prepare and file the SOFA. That oversight benefitted neither the estate nor the Debtor and therefore cannot be compensated.[9] E.g., Rubner & Kutner, P.C. v. U.S. Trustee (In re Lederman Enterprises, Inc.), 997 F.2d 1321, 1323 (10th Cir. 1993) ("[T]he beneficial nature of legal services must be determined before a reasonableness inquiry may even be conducted...."); In re Ewing, 167 B.R. 233, 235 (Bankr. D.N.M. 1994). Thus the total attorney billable hours that may be compensated is reduced by 1.2 hours.

Regarding the proposed $300.00 flat charge requested for preparing and filing the fee application, increased by costs and GRT on both the $300 and the costs, for a total of $351.21, Exhibit 1 to the application does not say how much time was incurred by whom in preparing the application. A reasonable fee for preparing a fee application is compensable, of course. In re Ewing, 167 B.R. at 236; In re Fibermark, Inc., 349 B.R. 385, 397 (Bankr. D. Vt. 2006) ("Reasonable time spent preparing a fee application is compensable...." Citation omitted.). The Court finds that one hour should be a reasonable time for a simple Chapter 13 fee application. Counsel should review the monthly

---

[9] The Court recognizes the additional resources required of the Chapter 13 Trustee to review the case a second time and conduct a continued section 341 meeting based on the oversight. The Court declines in this instance to reduce Counsel's fees further based on that oversight, and in any event, the Chapter 13 Trustee has not requested any such relief.

Case 09-13824-t13   Doc 35   Filed 06/30/10   Entered 06/30/10 16:26:06 Page 8 of 22

bills each month when they are sent to the client, and adjust
them as needed.[10]  The bills will then be readily available when
it comes time to file the fee application, and simply inserting
the total into a form fee application, and attaching the bills to
the application, should require a minimal amount of time, most of
it clerical.  Some minor additional attorney time is appropriate
if bills need to be reduced to reflect an overall result, and for
any redaction that the protection of the attorney client
privilege might entail.  The amount sought in this application
will therefore be reduced to reflect a charge for one hour,
together with associated costs, plus taxes thereon.[11]

On the issue of what rate should be permitted, this judge's
practice up to now has been to require that where employment
orders were required, the employment order recite the rate of
compensation, including in hourly rate cases.[12]  That practice
had the effect of allowing everyone to know what the rate was
and, by applying the lodestar methodology, to anticipate what the

_____

[10] Of course there should be no charge for reviewing,
correcting and adjusting the bills on a monthly basis.  That
process is part of an attorney's obligation to the client as a
non-compensable aspect of representing the client.

[11] Indeed, counsel should record precisely the time actually
spent in preparing a fee application.  However in this instance
the Court declines to require Counsel to supplement his fee
application to address this issue.

[12] To be clear, no employment order is needed for a debtor's
chapter 13 counsel.  The Court discusses chapter 11 procedures in
this case in order to more fully explicate the Court's policy.

Case 09-13824-t13   Doc 35   Filed 06/30/10   Entered 06/30/10 16:26:06 Page 9 of 22

fees might reasonably be.  <u>See</u> section 328(a) (court may change

terms and conditions of employment after the conclusion of such

employment "if such terms and conditions prove to have been

improvident in light of developments not capable of being

anticipated at the time of the fixing of such terms and

conditions.").  This practice was useful in several ways, not

least for budgeting purposes for the employed professional

counsel and for setting the amount of interim (monthly)

compensation for counsel in chapter 11 cases.  The Court still

takes that approach for professionals such as real estate agents,

auctioneers, and special counsel on contingency cases, the

reimbursement terms for whom are expected to be fixed at the

outset of the employment.

On the other hand, ruling on the hourly rate in the context

of a fee application rather than at the outset in an employment

application permits the parties and a court to judge the value of

services after the fact rather than predicting it beforehand.

That is, in addition to counsel setting out the number of hours

billed and what was accomplished for the estate and the debtor,

counsel may also seek approval of the billing rate in the context

of the fee application.[13]  Of course, counsel will need to

---

[13] Such a ruling will not necessarily ensue in any given
case.  For example, if a fee application draws no objections
because the work was done at a reasonable cost, regardless of who
billed at what rate, the Court could approve the fee without
needing to approve the rates.

Case 09-13824-t13   Doc 35   Filed 06/30/10   Entered 06/30/10 16:26:06 Page 10 of 22

disclose to the client at what rate counsel is billing, regardless of the chapter under which the case is filed, and such information must be disclosed in any employment application filed when, for example, counsel represents a trustee or a chapter 11 debtor in possession.

This approach of ruling on the hourly rate in such a manner that takes into account the value of the results in determining the hourly rate of counsel might at first blush seem to run afoul of the ruling in <u>Perdue v. Kenny A. ex rel. Winn</u>, ___ U.S. ___, 130 S.Ct. 1662 (2010) (in 42 U.S.C. section 1988 litigation, fee enhancements above lodestar figure are prohibited if based on factors incorporated into the lodestar calculation; fee enhancements above the lodestar consequently will be rare).  In <u>Perdue</u>, the United States Supreme Court reversed a 75% fee enhancement in a civil rights case in which counsel sought compensation under section 1988(b).[14]  The Court reasoned that counsel's hourly rate should take into account the prevailing rate in the community for similar sorts of representation (the

_____

[14] Title 42 U.S.C. § 1988(b) provides:
"In any action or proceeding to enforce a provision of sections 1981, 1981a, 1982, 1983, 1985, and 1986 of this title, title IX of Public Law 92-318, the Religious Freedom Restoration Act of 1993, the Religious Land Use and Institutionalized Persons Act of 2000, title VI of the Civil Rights Act of 1964, or section 13981 of this title, the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs ...."

Case 09-13824-t13   Doc 35   Filed 06/30/10   Entered 06/30/10 16:26:06 Page 11 of 22

factor listed in section 330(a)(3)(F)), and that counsel's best efforts and superior performance should be accounted for in the rate that counsel charges, including if counsel achieves an excellent result.[15]

Other than the commonality of the lodestar as the subject of Perdue and of this case, which commonality arises from the fact that the lodestar methodology for calculating fees became commonplace after the practice of hourly billing had become widespread, id. at 1672, the holding in Perdue is irrelevant for this inquiry. The underlying inquiry in section 1988 fee cases is whether the lodestar fee is adequate to attract competent counsel to do that sort of work for plaintiffs. Id., at 1674, citing Blum v. Stenson, 465 U.S. 886, 897 (1984). While Counsel

_____

[15] The trial court in Perdue had based its upward adjustment on the generalized finding that the work and the result were the best the trial court had seen in almost six decades in practice and on the bench, a standard which allowed no effective review on appeal. Id., at 1682. Another factor seemed to be the Court's distress at the resulting enhanced hourly rate for the single highest billing attorney – $866, id. at 1675-76 and 1683 - a rate which far exceeded the salaries paid to Georgia state employees who were lawyers, id. at 1676 n. 8, and which also far exceeded the $34,000 annual per capita income of Georgia residents. Id. This Court would merely note that as far back as 2001, certain national counsel for a chapter 11 debtor in possession sought approval of hourly rates in this district under a "bundled rate structure [of] $445 to $670 for partners....". These rates were "subject to periodic increases in the normal course of the firm's business...." In re Furr's Supermarkets, Inc., No. 01-10779 (D.N.M.), doc 18 (Declaration of Richard Levin under 11 U.S.C. §§ 327, 329 and Bankr. Fed. R. Bankr. P. 2014 in Support of Application for Order Approving Retention of Skadden, Arps, Slate, Meagher & Flom LLP and Affiliated Law Practice Entities as General Bankruptcy Counsel) at 7-8.

made that very argument for a higher rate in chapter 13 cases,
the proof submitted by Counsel and this Court's observations of
chapter 13 practice conducted before it suggest no significant
dearth of attorneys competently representing chapter 13 debtors.
Some examples of the enormous differences between chapter 13
debtor work and civil rights contingency work illustrate why that
is the case.  Chapter 13 work involves relatively small fees for
each case – typically a few thousand dollars – and between the
usual up-front payment and relatively quick and sure distribution
from the chapter 13 trustee, chapter 13 debtor's counsel are
reasonably assured (albeit not guaranteed) of payment.  In major
civil rights' cases, on the other hand, the required outlay of
resources may be massive (in <u>Perdue</u>, approximately 24,000 hours
of attorney and paralegal time; <u>Kenny A. ex rel. Winn v. Perdue</u>,
454 F.Supp.2d 1260, 1287 (N.D. Ga. 2006), <u>aff'd</u> 532 F.3d 1209
(11th Cir. 2009), <u>rev'd and remanded</u> 130 S. Ct. 1662, payment
often comes only years later, <u>Perdue</u> at 1675, it may not come at
all, <u>id.</u>, or it may come in a reduced amount, and it may be
subject to advancing costs of litigation (in <u>Perdue</u>, $1.7 million
over a three-year period with no interim reimbursement; <u>Kenny A.
ex rel. Winn v. Perdue</u>, 454 F.Supp.2d at 1288).  <u>Perdue</u>, at 1676.
Fortunately none of these perils or burdens exist for the most
part in chapter 13 debtor work, and thus the concern addressed in
section 1988(b) to ensure incentives to counsel to undertake

Case 09-13824-t13   Doc 35   Filed 06/30/10   Entered 06/30/10 16:26:06 Page 13 of 22

civil rights cases does not exist for chapter 13 debtor representation. More directly, section 1988(b) addresses the specific problem that its plaintiffs almost by definition do not have the resources to fund the litigation they need to vindicate their rights. Chapter 13 debtors, on the other hand, if they are appropriately in a chapter 13 case, presumably do have the resources to pay their attorney. In consequence, <u>Perdue</u> does not preclude this Court from adjusting the rate charged by a chapter 13 debtor's attorney based on an after-the-fact review of the work, and the Court is not limited to only adjusting the number of hours for which counsel will be compensated.[16]

With that preface, the Court considers the issue of the rate charged by Counsel. The Court first notes that, in complying with section 330(a)(3)(F) – "whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title" – Counsel submitted a chart showing only the range of fees charged by other chapter 13 debtors' attorneys. Exhibit 3. He did not submit evidence of rates charged by creditors' counsel, nor did he submit any evidence of rates charged in any comparable area of law. And what exhibit 3 showed was a range of hourly rates from $185 to $200. In consequence, the only

_____

[16] A number of other differences distinguish chapter 13 debtor work from civil rights litigation, but the Court need not go into those differences for this decision.

evidence this Court has on the issue of comparable rates shows Counsel's rates as an outlier on the upper end of the rates scale.

Counsel also argued that his reputation in the legal community was such that 90% of his cases were referrals from other attorneys, and that he tended to get the more complicated, business type of chapter 13 cases.[17]  Perhaps this latter assertion is true; exhibit 3 would seem to provide at least indirect support for that proposition in that it shows that for 15 chapter 13 cases handled by Counsel, the total payout[18] was $1,145,062.41 with fees totaling $78,706.62, for an average fee of $5,247.11 and an overall ratio of 0.0687357 of total fees to total payouts.[19]  The comparable numbers in exhibit 3 for other

---

[17] He also stated that a number of his referrals were from Santa Fe counsel who sent cases to him because they did not want to do them.  This does not necessarily support a higher hourly rate.

[18] Presumably for each case the total payout includes payments to the chapter 13 trustee for her commission, to Counsel for his fees and to any other administrative claimants, on arrearages on secured claims, on priority claims, and on non-priority unsecured claims.

[19] A chapter 13 case which pays only the chapter 13 Trustee fees and some of counsel's fees can be confirmed in unusual circumstances.  See In re Molina, 420 B.R. 825 (Bankr. D. N.M. 2009); contra, In re Sanchez, 2009 WL 2913224 (Bankr. D. N.M. 2009), citing  In re Paley, 390 B.R. 53 (Bankr. N.D.N.Y.2008). That said, Counsel's emphasis on the size of the payments to creditors, particularly unsecured creditors, compared with the amount of his fees, is salutary and argues in favor of approval of his fees.  In this respect, exhibit 4, which detailed the payouts in Counsel's cases (albeit not including cases that were

counsel for 17 chapter 13 cases filed in CY2009 were $532,468.00 and fees of $59,531.48, resulting in an average fee of $3,501.85 for a ratio of 0.1118029.[20] Of course, each chapter 13 case is sui generis, and the creditors of each are entitled to receive the maximum payment to which they are entitled based on a reasonable fee allowed to debtor's counsel, regardless of counsel's accomplishments in other cases.

More broadly, the Court concurs strongly with the rationale and the conclusion in Romero, whereby Counsel was permitted to charge $200 per hour. Acknowledging that chapter 13 cases are not at all necessarily simple or routine[21], seldom (if ever) do chapter 13 cases require debtor's counsel to negotiate or litigate first-day orders, cash collateral orders, debtor in possession financing, a disclosure statement, cram down or exit financing.[22] Thus a very experienced chapter 11 debtor's

_____

dismissed or converted), was quite helpful.

[20] Counsel made no representations about the methodology by which the cases were selected. In two of the "other counsel" cases, the fees had yet to be approved.

[21] By the same token, the Court concedes Counsel's point that not all chapter 11 cases are more difficult than a complex chapter 13 case. In particular, the Court notes that a number of personal chapter 11 cases are essentially chapter 13 cases in a different guise because the debtor could not fit under the chapter 13 debt limitations. Many of these cases are relatively easily administered.

[22] The Court concedes that occasionally a cash collateral order, or an order permitting a debtor to finance the purchase of a vehicle, may be required, but even those tend to be simpler

Page 16 of 21

attorney doing a chapter 13 case will ordinarily find little use
for many of the skills she or he has available in her or his
chapter 11 quiver.  In those chapter 13 cases in which such
skills are called for, counsel can clearly request the
appropriate compensation, including a higher rate.  As the
foregoing recitation of facts demonstrates, however, there was
certainly no such complexity in this case.  Charging the estate,
in the form of a higher hourly rate, for a range of skills that
will almost certainly not be needed for the case is rather like
renting a supercomputer to do word processing; one can do it, but
why?

> The fact that Counsel is competent to handle a more
> complex matter fails to justify a significantly higher
> hourly rate when the matter is not complex, and the
> case does not involve any novel or particularly
> difficult issues. Greater efficiencies of a more
> skilled lawyer do not necessarily translate into lower
> charges when the lawyer handles relatively routine,
> repetitive tasks.  Competent lawyers with less
> experience or skill in more complicated matters who
> charge lower hourly rates handle the same,
> less-complicated routine tasks as competently and
> efficiently as attorneys with greater skills to handle
> complex cases.  Greater skill and experience do not
> justify a significantly higher hourly rate when the
> greater skill is not applied to the tasks performed and
> where the greater experience in complex matters does
> not benefit the debtor or the estate.  This is not to
> suggest that a higher hourly rate may never be
> justified in a chapter 13 case, or that Counsel would
> not be entitled to a higher hourly rate in a chapter 11
> case.  The determination of a reasonable hourly rate
> must be made on a case by case basis, taking into
> account the complexity of the case and any other

_____

than the analogous motions in a chapter 11 case.

> relevant factors.  A complicated chapter 13 case could
> merit Counsel charging his higher customary hourly
> rate.  But the case now before the Court was not an
> unusually complex chapter 13 case, and Counsel has not
> demonstrated any other factors relevant to the case
> that would justify a higher rate.

Romero, at *5-6.  (Footnotes omitted.)  To be clear, the Court is

not discouraging any attorney who is competent to manage a

complex chapter 11 case from representing a chapter 13 debtor;

indeed, given the rising need for competent debtor

representations in the current economic circumstances, such

representation is welcome.  Rather, the limitation is only on

what hourly rate the chapter 13 estate and debtor should be

charged.

Counsel argued that simpler cases result in less time spent,

and therefore result in a lower fee even with a higher hourly

rate.  In a similar vein, Counsel also urged that if the Court

determined that overall the fees charged were too high, the Court

could adjust the total fee by reducing the hours instead of the

rate.

To start with, the Court has some question about the

accuracy and the applicability of the first proposition.  As a

general rule, it probably is true that simpler cases result in

less time spent.  But a chapter 13 case which requires few if any

motions to be filed and requires only a simple plan, can still

demand more time depending on numerous factors out of the control

of debtor's counsel, such as the tactics and behavior of the

Page 18 of  21

other counsel or parties, the court's handling of the case, the demands of the chapter 13 trustee, a change in the law, etc. As merely one example, the debtor may need a certain amount of "hand holding"; e.g., more than average telephone conversations or office visits to educate an unsophisticated debtor or reassure a frightened debtor. To some extent, all attorneys who are acting professionally take their clients as they find them, in a sort of bankruptcy version of the "eggshell head rule"[23], and debtors' counsel should be compensated for a reasonable amount of time spent serving as "counsel" for a debtor.[24] This sort of service would apply as well to a client with communication difficulties or whose records are in considerable disarray. These factors are easily explained in the narrative of a fee application.

More to the point, a straightforward accurate accounting for the time spent on a case is most useful for every participant in the process. Reducing the hours for which counsel may be

---

[23] See Black's Law Dictionary at 533 (7th Ed. 1999); Martin v. Darwin, 77 N.M. 200, 202, 420 P.2d 782, 784 (1966) ("Where plaintiff has a pre-existing condition and claims that defendant aggravated that condition, plaintiff must prove the extent of that aggravation."); 2 Restatement (Second) of Torts §461 (1965) (Harm Increased in Extent by Other's Unforeseeable Physical Condition); D. Dobbs, The Law of Torts §188 at 464 (2001) ("The foreseeability or risk rule holds the defendant subject to liability if he could reasonably foresee the nature of the harm done, even if the total amount of harm turned out to be quite unforeseeably large.") (Footnote omitted.)

[24] Of course, the debtor rather than creditors should pay for excessive "hand holding". This Court is not going to hazard even a suggestion about where to draw that line.

compensated makes sense when time has been inappropriately billed for some task, either because the task did not need to be performed to begin with (_e.g._, attending a continued section 341 meeting because counsel failed to prepare and file a critical document) or because too much time was devoted to the task. This approach addresses the "too much time spent on the problem" issue directly. Reducing hours is a very indirect and therefore much less useful way of addressing the issue of what rate should be charged.

CONCLUSION

Based on the foregoing, the Court has recalculated what Counsel is allowed for the application in Exhibit A, attached hereto. Based on the foregoing analysis, the Court allows the application in the total amount of $3,829.82, which sum, less the $1,000 retainer drawn down by Counsel, entitles Counsel to payment from the estate of $2,829.82. An order conforming to this memorandum opinion will enter.


_____
Honorable James S. Starzynski
United States Bankruptcy Judge

Date Entered on Docket:  June 30, 2010

Copies to:

Daniel J Behles
Moore, Berkson & Gandarilla, P.C.
P.O. Box 7459
Albuquerque, NM 87194

Kelley L. Skehen
625 Silver Avenue SW
Suite 350
Albuquerque, NM 87102-3111

United States Trustee
PO Box 608
Albuquerque, NM 87103-0608

| Biller | Rate | Time | Lodestar | Add GRT* | Amount | Total |
|---|---|---|---|---|---|---|
| 1H09 | | | | | | |
| Counsel | $ 200.00 | .8 | $ 160.00 | 6.750% | $ 10.80 | $ 170.80 |
| Paralegal | $ 65.00 | 1.9 | $ 65.00 | 6.750% | $ 4.38 | $ 69.38 |
| Costs | $ 1.40 | | | 6.750% | $ 0.09 | $ 1.49 |
| 2H09 | | | | | | |
| Counsel | $ 200.00 | 11.8‡ | $ 2,360.00 | 6.875% | $ 162.25 | $ 2,522.25 |
| Paralegal | $ 65.00 | 7.5 | $ 487.50 | 6.875% | $ 33.51 | $ 521.01 |
| Costs | $ 23.13 | | | 6.875% | $ 1.59 | $ 24.72 |
| 1H10 | | | | | | |
| Fee app prep | $ 200.00 | 1.0 | $ 200.00 | 6.625% | $ 13.25 | $ 215.25 |
| Noticing | $ 29.00 | | | 6.625% | $ 1.92 | $ 30.92 |
| PLUS: | | | | | | |
| Filing fee | $ 274.00 | | | | | $ <u>274.00</u> |
| | | | | | GRAND TOTAL: | $ 3,829.82 |

Note: The numbers are drawn from the exhibits to the fee application.  Doc 25.

*The GRT rates for Bernalillo County for the first half of CY2009 was 6.75%, for the second half of CY2009 was 6.875% and for the first half of CY2010 was 6.625%.

‡This figure excludes the 1.2 hours of billing disallowed by the Court resulting from the time spent preparing for and attending the second session of the section 341 meeting.